Thank you very much. May it please the Court, Counsel. The two primary issues presented for this Court's consideration are whether the search warrant in this case should be invalid or whether the evidence in this case should be suppressed because of the invalidity of the search warrant and the difficulties with the search warrant affidavit in particular. And the secondary issue, which I think has some more far-reaching issues as far as Ninth Circuit law goes, is the District Court's decision to extend the marital communications privilege or the exception to the marital communications privilege to grandchildren in a particular fact-specific situation such as occurred in this particular case. First, dealing with the issues relating to the search warrant. We see from the search warrant in this case, and particularly the affidavit in support of the search warrant, that it has significant issues with respect to the foundation set forth in that affidavit by Agent Martin, who was the FBI agent involved in the investigation of this case, the primary lead agent, I would say, with respect to this particular case. Particularly problematic is a review of what Agent Martin set forth in her search warrant affidavit with respect to her background training as to child abuse cases. And if we look at the excerpts of record page, or my tab 18, we see that search warrant affidavit, and paragraph 1 is primarily the only section in that affidavit that sets forth any information regarding Agent Martin's training with respect to child abuse and other types of investigations. Counsel, and what was deficient about that? Well, what's deficient about that, Your Honor, is if we take a look at simply section 1, section 1 in and of itself is not deficient because it simply lays out what her training and experience is, essentially her training summary. And what it says is she's taken some classes without identifying what those classes are, and says that she has attended crimes against children training sponsored by the FBI. And she has 10 years of experience. Doing so. This is correct. Turning, though, to, for example, the particular areas that I was looking forward to bring to your attention would be on page 6 of that affidavit, paragraph J, which has to do with, for example, the definition of what an Internet protocol address is. There is nothing in her training summary that says anything about how she would have obtained knowledge regarding an Internet protocol address information as to what that actually is. Is there anything incorrect about that definition? Not to my knowledge. There wouldn't be anything incorrect with respect to that definition. Why do you need FBI training to know about Internet addresses? As far as an Internet protocol address, the average person, I think that this would be something that would not be subject to, I would say, perhaps lay testimony. In other words, I can say this microphone is black, and I don't need an expert to tell me that particular thing. But if I need to be trained, say, for example, in how to interpret the results of DNA on a particular slide, I don't know anything about DNA results on a slide other than maybe what I've learned through my work as an attorney. But the average person would not understand such concepts without the assistance of expert testimony. So if we then look at the... Why would this be consistent with her training and experience as articulated in the affidavit? It may or may not be consistent with her training and experience, but the point is that the affidavit in and of itself does not say that she has any particular training in being able to tell a district court, or I should say a magistrate court, what an Internet protocol address is. And then if we move, for example, to the more problematic paragraphs, which are paragraphs 9 through 16, in the background on computers and child pornography section in this search warrant affidavit, we start talking about complicated matters that do not fall within the purview of what we might consider lay testimony. But she's not a lay person. I mean, she starts out by saying she has 10 years of experience investigating the sexual exploitation of children. And even without any further training, why isn't that sufficient to support the magistrate reasonably believing that she understands how computers are used in child pornography? After 10 years, if she didn't, it would be pretty embarrassing. Well, I guess maybe the fair way to answer that question would be let's assume that this was a jury trial and this was not even a criminal case. Maybe it was a civil case where some computer expertise was necessary for the jury to make its decision with respect to what was going on. And the person says, I have 10 years of training in child abuse. And then they go on to recite information set forth in paragraphs 9 through 16 when we talk about what collectors of child pornography do. Paragraph 13, for example, how they save e-mails, bookmark files. But counsel, it's not child abuse. It's the sexual exploitation of children in violation of federal law. That's what she's talking about. And that incorporates, since much of those, many of those crimes involve computers, you know, if that's what she told the jury, then I would think that this would be admissible testimony. It might be admissible testimony with more foundation explaining how she came into to become aware of things. For example, if we take a look at paragraph 15 of this affidavit very briefly, which is set forth on page 9 of the affidavit, she talks here in paragraph 15 about this program called WinMX being a one-kind P2P file sharing program available for free over the Internet, talking about decentralized peer networks and things along those lines. And I guess the bottom line on this particular issue is how did she come to learn this? And what is in the affidavit that says that Agent Martin is capable of testifying on these very complicated matters that are set forth in paragraphs 9 through 16 of her affidavit? Counsel, what case authority supports your argument that there has to be a detailed foundation made for information that's in the search warrant affidavit? I don't know that there is any particular authority that says that it must be, would have to set forth facts that would otherwise be admissible in evidence. But, you know, I guess to draw an analogy, perhaps Rule 56 of the Idaho, sorry, the Federal Rules of Civil Procedure would be a place where we would draw what it is that we actually expect in affidavits. But it just says in 56 it has to be based on personal knowledge, and she set forth the premise under which she acquired the personal knowledge in the affidavit. That could be if, in fact, she had set forth her educational basis and background that talks about anything relating to her knowledge about computers. And I would just simply submit for the record that 10 years of law enforcement experience and child abuse training probably doesn't, wouldn't necessarily satisfy the foundation for the computer expertise that's set forth in the affidavit. If I could move on to the marital communication issue, since my time is running quicker than I thought. The marital communication privilege that was abridged in this particular case is problematic for a variety of reasons. As set forth in the briefing by both myself and the government, we both agree in this circumstance that the privilege in this case, had it been followed, the testimony relating to Mr. Banks' admission to his wife would not have been allowed. Yet the district court went on somewhat of a fact-finding mission and decided that the unique circumstances of this case, because they were caring for the child, they had done so for some time, providing finances for the child, and things like that, warranted an exception in this particular case to. Counsel, because your time is short, I want you to know the question that's bothering me. This issue, this question that's before us, whether a grandparent can testify against her spouse based on victimizing a grandchild, that's a novel question in this circuit. Is that true? It is very novel. The district court looked to the Tenth Circuit's decision, and the Tenth Circuit has held that the marital privilege, communication privilege, does not apply if it is the child of a relative. What's wrong with the district court's reliance on the Tenth Circuit? Because the district court really didn't follow the Tenth Circuit analysis. All right, then what's wrong with the rule in the Tenth Circuit that it does not apply to the child of a relative? I think the problem with that is that when you begin to abridge privileges, you tread that dangerous path. Because as we talked about in U.S. versus Griffin, we have the marital communications privilege, so there can be trust and confidence exchanged between spouses to preserve the integrity of marriage. Now, the Ninth Circuit has only on one occasion. This is not a communication that preserves the integrity of their marriage, is it? No, I would say the marriage is pretty much over at this point. But you have to look at the privilege as a whole, and when are you and when are you not going to adopt an exception to the privilege. And I would point out that when you go on a fact-finding mission in each particular case to decide when there will or when there won't be a privilege, that's when we run into real problems with respect to how we're going to apply uniformity and consistency to the law. And, therefore, I don't know that necessarily as a matter of public policy, this Court would be incorrect in saying, okay, if child abuse is the issue, such as the rule in Idaho, which is there is no privilege when the communication is made and it relates to the abuse or potential abuse of the child, and if that's where the Ninth Circuit wants to go with respect to it, then that's what it should do. What it should not do and what this Court should not recognize is, and countenance, a fact-finding inquiry each particular time we're going to deal with a case. I mean, imagine... Counsel, let me just, because, again, your time is short. Assuming that it was erroneous to allow the testimony, where's the prejudice? Where it was not really the basis of the district court's ultimate decision in this bench trial. It's tough to say whether it was or was not. Here's the problem with that. First off, I would point out that any time you have an admission by an individual accused of a crime that they did it, that's pretty damaging. Second, I'm assuming that the court has had an opportunity to review the video, or if not, you will, and the video really shows hands changing a baby's diaper, and there was testimony relating to the watch and relating to the ring. And that would have been admissible anyway. Absolutely. I have no quibble with that whatsoever. Just pointing out, though, that the district court didn't say, I'm giving 50 percent weight to the admission, 25 and 25, to the ring and to the watch. We don't really have any way to particularly dissect how much weight, if any, the district court placed on any bits of the evidence that were placed before him. I would point out, though, that the government's deliberate attempt to do everything it possibly could at trial to get this evidence in demonstrates how strong they felt it was. For example, the record reveals that Ms. Banks initially was asserting the privilege on her own. We took a break. She was talked to by the government and then decided to waive her right to testify. And so we know that the government really felt strong about getting this evidence in because it was a significant issue at trial. Was there any dispute that it was his hand, his ring, his watch? That would definitely have been a disputed issue. At trial it was? Absolutely. He said it was not his hand, not his ring? No, he did not say that. He did not testify. Well, was there a disputed issue in some way? That was simply left for the finder of fact to decide. Based on the prosecution's evidence? I'm sorry? Based on the prosecution's evidence? Absolutely, based on the prosecution's evidence. And it would have been argued in closing, of course, that there just simply was insufficient evidence to prove that he was the individual had it just been a video of a diaper change with a pair of hands doing it. Counsel, when there's a bench trial, doesn't our case law say that there's less likelihood of prejudice because the district court is better able to filter out any prejudicial information and take cognizance of only that which is admissible? There is, but the district court ruled that the evidence would be admissible, and so we really don't have any way to assess how much weight he placed on that particular piece of evidence as opposed to any of the other pieces of evidence that were submitted. I see I have just one minute remaining. May I reserve that for rebuttal? You definitely may, and we'll hear from the government. Excuse me, I'm sorry. We'll put it last on the docket, and then we can... Thank you. Sorry, we're still negotiating, but just so that there's no secret here on the case that we'll come back to Yaeger, we'll put that last on our docket because counsel thought that the case was submitted, and he's back in Montana, so we're going to hook him up by phone last on the docket. Thank you. May it please the court and counsel, good morning. My name is Alexandra Gelber. I'm here on behalf of the United States. I'd like to start, if I may, with the marital communication privilege, and in particular by noting that in this case the admission of the testimony by Mrs. Banks constitutes harmless error. As the Court has already noted, this was a bench trial, and the case law in the Ninth Circuit suggests that judges are better able to deal with prejudicial issues than juries. But how would the court have known that it was prejudicial? If the judge thought the evidence was admissible, which it clearly did, why isn't a confession important to a judge just as it is to a jury? Well, I'm not saying – I wouldn't suggest that a confession would be irrelevant, although I would note that the district court in its findings of fact did not point to the confession when deciding the issue as to the identity of the person who produced the video. He pointed to the identity that the ring of the person in the video was identified as the defendant, his watch was identified, the couch was identified as being in the garage to which the defendant had almost exclusive access. He had access to the child on the date and time that the video was produced, and he had made a statement to his daughter that he had changed the diaper on that day. And all of that would have been admissible regardless. Exactly. And those were the facts that the judge pointed to when determining the issue of identity. So the introduction of the statement was just one of many pieces of evidence. It wasn't the sole piece of evidence that was used to establish the defendant's identity. So, therefore, we would argue it's harmless error. You used the term confession perhaps because we may have used it. Yes. Was this really a confession? Did he say that he molested the child? He said that he produced the video. That was the wife's testimony. I don't want to – He did not say that – didn't he say he was changing the diaper? He said that he produced the video because he didn't – to protect himself from any accusations of wrongdoing. So in that sense, of course – That doesn't sound like a confession. Well, it is with respect to – he admitted that he did it under the Federal statute that he was charged with. He would have to have used the child for the purpose of producing a sexually explicit video. He didn't admit that that was his purpose, but he did admit that he was the one – the one who did it. So another reason that brings me to another point why this is harmless error is the fact that a portion of the wife's testimony was – Are you conceding it was error? No, I'm not. I'm saying that either way, we win the argument. I just wanted to start with the harmless error point. But a portion of her statement was exculpatory as well. So in fact, her testimony benefited the defendant. It could have. The court – the district court ultimately rejected the exculpatory portion. But even on the merits, we would say that we win the issue. The Supreme Court in Trammell indicated that when determining whether an exception to a privilege applies, a case-by-case analysis is correct. And the decisions from the Seventh Circuit, the Tenth Circuit, and this circuit all take a case-by-case, fact-by-fact analysis. And so that would be appropriate to do here. We are not asking this Court to issue a broad rule and say in all cases involving grandchildren that there should be an exception to the marital communication privilege. Our point is that on the facts of this case, the policy that underpins the privilege is not served. All the courts that have discussed this issue have said that this privilege should be construed narrowly. It is not a popular privilege. It obstructs the fact-finding mission. And in this case, where essentially you have a defendant who is repeatedly unfaithful to his wife with his own children and grandchildren, the policy that underpins the privilege is not served by applying this case. Does the facts in this case support application of the exception? That the grandchild was, for the first six months of his life, resided in the home of Mr. and Mrs. Banks. Not alone. They weren't the primary caregivers, were they? Well, the first six months he was with his parents and his grandparents, Mrs. Banks did serve a caretaking role during that time period. Primary? No, not the primary. But she did, when babysitting, would care for feeding, bathing, clothing. In those moments when she was babysitting, she was effectively the primary caretaker. How often was that? Well, it was the entire first six months period, and then after. And how often during that six-month period did she care for the child? Is it daily? I don't recall if we asked her that question or not. I'm sorry. I don't think that we developed that particular point. After that period, he would come for sleepovers, in which case she was the primary caretaker. That occurred four or five times in essentially the two years that happened after that period. And she was, as I said, the primary caretaker for him. And at the time, he was in the sole care and custody of the defendant. There was no one else on the property when the crime took place, so he was exclusively in the defendant's care. What case abrogating the marital privilege most closely resembles the facts of this case in your view? I would point to the Bahi case in the Tenth Circuit. What were the facts in that case that approached the facts in this case? That it was a – there was a relation – a familial relationship between the defendant and the victim. The Tenth Circuit does not specify what that relationship was. They don't say if it was – It wasn't a fact-intensive decision. The decision itself was not. I thought your argument was that it should be fact-based. Well, it – the Tenth Circuit did not reveal in detail the facts on which they relied. I don't know what was in the record before them. But in that case, it was – it wasn't a parental child. It was some sort of relationship that was broader than that. And the child was temporarily in the home of the defendant. And so I would say that on those facts, that's closest to this one. There's, of course, the White case in the Ninth Circuit, which I believe is – was a stepdaughter. So there – and again, there was a custodial relationship. There wasn't a biological one in that case. But both of those cases apply the exception to the privilege in cases where it's not strictly a biological parent-child situation. Counsel, if I follow you, you feel that as the court correctly concluded, that the privilege did not apply under these facts. That's correct. But you also said that you're not asking for a broad rule involving grandchildren. That's correct. What rule are you asking us to come up with? Simply that the district court's ruling was correct in this case. And what rule of law would I write to support that statement? The precedent in the Ninth Circuit in White in looking to the Tenth Circuit in Bahi and at the – viewing the practice in the State of Idaho, considering that this – her testimony would have been admissible had it been a State prosecution. In the White case, the Ninth Circuit did broadly state that in cases involving abuse in the home against a child, that the exception does not apply. So they did issue a broad sort of across-the-board rule. I would not stop there. I'm sorry. What difference does it make that it would be admissible in a State prosecution? Because if we adopt that as the reasoning behind – the rule you're seeking is the government wins. That's really your rule. I mean, you haven't articulated, you know, what are the 25 words that would describe a principle to apply in the next case. But I'm concerned particularly about your reliance on the State rule, because that would mean that there would be 50 different rules, if that's the way we looked at it. Well, we have two thoughts in response to that. One is the practice in the State of Idaho is informative. It's not binding. In the Trammell opinion, the Supreme Court looked to the practice in the 50 States in finding – to seek guidance on the issue as to whether reason and policy suggests – So how many States follow Idaho in this regard? There were – we cited some cases in the footnote in our brief. I don't recall how many there were. There is information in our brief. And to get to the other part of your comment about the sort of principle that should be at work in deciding what to do in these cases, what the Ninth Circuit has done previously is essentially looked at the policy that supports the privilege. What purpose does this privilege serve? And that's to foster a family harmony, communication among the spouses. That's the purpose. And then they take that and look at the facts of the case and say, is that policy served in this case? Is there something here that's still available to protect? So it really was in all the cases that we looked at on this issue, it's seeing whether that policy was vibrant under the facts of the case or whether it had so withered that there really wasn't a purpose in continuing to apply the privilege in that case. So are you saying that the court should determine the state of the marriage to determine if the privilege should be applied? So if the marriage partners are on good terms, it should apply. If they're not on good terms, it shouldn't apply. Is that what you're asking us to hold? No. I think that would be pretty disastrous if the courts had to look into the heart of the marriage. But it's done because a crime against a child in the home, it's sort of the home has foundered already. A crime has taken place there. So protecting something that's already damaged, there's less value in that sort of as a starting point. And that's where the cases that have analyzed this issue, that's been one of the critical facts for them is that this is a crime against a child in the home. Why did you need this evidence? Well, we, you know, in hindsight, it seems unnecessary. It certainly caused us a great deal of work. But we have the obligation of proving our case. And that the defendant said that he did it was pretty powerful evidence that we didn't feel that we had to leave out of the record. We had to prove the case. And there were several different defense theories that were advanced at trial. And we just wanted to make sure we put on the best case that we could. So in my ‑‑ if there are no more questions on that issue, in my remaining moments, if I could just circle back to the search warrant issue. And again, I'm going to start at the end. We do not concede that there were ‑‑ that the search warrant was overbroad. But I would start by saying that the good faith exception does apply in this case in the event that the court found that the search warrant was overbroad. There was no allegation of any sort of reckless omission of any facts, no indication that the magistrate abandoned his neutral role. And I don't think Agent Martin could have reasonably anticipated that a portion of her warrant would have been excised out on appeal. So certainly on the face of it, she had ‑‑ couldn't have known that it would have been so faulty that she couldn't reasonably rely on it. Could you briefly address the foundation arguments that were made by opposing counsel? Sure. There's ‑‑ I think the critical fact in looking at this issue is there's absolutely no allegation that any information in the search warrant affidavit is false. So even if you assumed that 10 ‑‑ I actually think it's 16 years as a law enforcement officer, seven or eight years working crimes against children, if that was insufficient, there's no error in it. So adding her source, assuming that she had one, really wouldn't have changed any information in the warrant at all. So it seems a rather moot thing. But her qualifications are really unassailable. She's had almost decades of experience working these cases, and she properly relied on that in drafting the affidavit. And nor is a search warrant affidavit is just ‑‑ the purpose is to lay out fair probability. This is not a trial. It's not a Daubert standard. She's not required to lay out expertise testimony that she might have to do at trial. It's a lesser standard. And her experience adequately permitted her to do that. Are there no other questions? I'll ‑‑ I don't believe there are. I'll forfeit my remaining 20 seconds. Thank you very much. Thank you. And you've reserved a little bit of rebuttal here. Your Honor, you had asked what rule do we write. The rule that we write is that this circuit will not extend the previously recognized exception relating to the spousal communications privilege beyond that which has already been recognized. The reason that this court should not do that is because taking away those exceptions or taking away those privileges abrogates the law as it exists right now. We have plenty of evils in this society. We have murder. There is no exception for spousal communications in cases of murder. We have rape of individuals over the age of 18, both males and females. We don't have any recognized exceptions there. We have one recognized exception, and that is as far as this circuit has ever been willing to go. And apparently other circuits have been willing to go as well. So what we need to do is ‑‑ This circuit, however, has never reached this issue. No, it has not reached this issue. And the question is, is where do we stop? I mean, how many different times and how many different ways will we carve out exceptions to privileges? So your rule would be that an admission of the molestation of the child of a relative is protected by the marital communications privilege? So long as it's not between the husband and wife. That is correct, Your Honor. My time is up. Thank you for your attention. Thank you, counsel. We appreciate the arguments of both counsel. The case just argued is submitted. We'll move to the last case and then come back to the first one. So we'll next hear argument in Holley v. McKaysey. And then we'll take a five‑minute break while things get set up, and we'll come back for that last case.
judges: Alarcon, Graber, Rawlinson